UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHELIA SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 5287 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| ERIC K. SHINSEKI, Secretary, U.S. Department of Veterans Affairs, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Shelia Smith brought this suit against her employer, the United States Department of Veterans Affairs ("VA"), alleging discrimination and retaliation in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*. Doc. 1. The VA sought summary judgment on the ground that Smith failed to exhaust her administrative remedies, and the court denied the motion because there was a genuine dispute of material fact on the key question of whether Smith's attorney, Timothy Bridge, received a copy of the VA's final agency decision on or about June 12, 2009. 2012 WL 1597432 (N.D. Ill. May 7, 2012). To resolve that factual dispute, the court conducted an evidentiary hearing to determine whether Bridge had in fact received the VA's final agency decision at that time. Doc. 54.

At the outset of the evidentiary hearing, Smith argued for the first time that she had a Seventh Amendment right to have exhaustion-related factual issues decided by a jury rather than by the court. For the reasons given below, the court holds that Smith's prior express consent to the court's conducting an evidentiary hearing waived any Seventh Amendment right she might have had. The court then goes on to find as a matter of fact, in light of the evidence presented at the hearing and the undisputed evidence presented at summary judgment, that Bridge received a

1

copy of the VA's final agency decision denying her administrative charge on June 12, 2009, and therefore that Smith did not timely seek review of that decision before the Equal Employment Opportunity Commission ("EEOC"). Finally, the court concludes that Smith's failure to exhaust her administrative remedies entitles the VA to judgment on her discrimination claim and on her retaliation claim to the extent it pertains to alleged retaliatory conduct occurring before she filed her formal administrative complaint with the VA.

**Background**

"Exhaustion is … a condition precedent to bringing a claim under the [Rehabilitation] Act." *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009). Thus, a federal employee generally cannot bring in federal court a Rehabilitation Act claim until she exhausts all administrative remedies available under the Act, with the exhaustion requirement being governed by the same rules that apply to suits under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. *See* 29 U.S.C. § 794a (adopting for Rehabilitation Act purposes the procedures set forth in Title VII, including the administrative exhaustion requirement of 42 U.S.C. § 2000e-5); *Teal*, 559 F.3d at 691 ("Individuals who have suffered discrimination can seek relief [under the Rehabilitation Act] pursuant to the procedures and requirements outlined in Title VII of the Civil Rights Act, which include exhausting administrative remedies prior to bringing suit."). Subject to the doctrines of waiver, estoppel, and equitable tolling, an employee's failure to properly exhaust her administrative remedies warrants the dismissal of her suit. *See Teal*, 559 F.3d at 693; *Smith v. Potter*, 445 F.3d 1000, 1006 n.14 (7th Cir. 2006); *Ester v. Principi*, 250 F.3d 1068, 1071 (7th Cir. 2001); *Gibson v. West*, 201 F.3d 990, 994 (7th Cir. 2000).

The pertinent exhaustion procedures for federal employees alleging violations of the Rehabilitation Act are as follows. The employee first must seek counseling with her agency's

2

Equal Employment Opportunity ("EEO") office within forty-five days of the allegedly unlawful act. *See* 29 C.F.R. § 1614.105(a)(1); *Smith*, 445 F.3d at 1002 n.1, 1006-07. If the employee remains dissatisfied, she must timely file a formal complaint of discrimination with the agency. 29 C.F.R. §§ 1614.105(d)-(e), 1614.106(a)-(b). If the employee requests a hearing, the EEOC appoints an administrative judge to hear the matter. *Id*. § 1614.109(a). After the administrative judge holds the hearing and renders a decision, the agency must issue a final agency decision. *Id*. § 1614.110(a). If the employee is dissatisfied with the final agency decision, she has two options: (1) appeal the decision to the EEOC within thirty days of receiving the decision, *id*. §§ 1614.401(a), 1614.402(a); or (2) bring suit in federal district court within ninety days of receiving the decision, *id*. § 1614.407(a). Where, as here, the employee is represented by counsel, the thirty-day window for filing an appeal with the EEOC commences when the attorney receives the agency's final decision. *Id*. § 1614.402(b).

The following facts were not genuinely disputed at the summary judgment stage and are drawn from the court's opinion denying summary judgment. 2012 WL 1597432, at *2. Smith, who has been employed by the VA since 1993, sought EEO counseling at the VA in February 2007 and then filed a formal discrimination complaint with the VA in June 2007. Doc. 31 at 2; Doc. 32 at ¶¶ 2, 3. On May 27, 2009, an administrative judge granted the VA's motion for summary judgment. *Id*. at ¶ 4. Copies of the decision were sent to Smith and to Bridge. Doc. 33-1 at 11. The decision told the VA: "[w]ithin forty (40) days of receiving this decision and the hearing record, you are required to issue a final order notifying the complainant whether or not you will fully implement this decision." *Id*. at 8. And the decision told Smith: "If the agency fails to issue a final order, you have the right to file your own appeal any time after the conclusion of the agency's (40) day period for issuing a final order." *Id*. at 9.

On June 8, 2009, the VA timely issued its final agency decision, which adopted the administrative judge's decision. Doc. 32 at ¶ 5. The decision states that "[w]ithin 30 days of receipt of this final action, the complainant has the right to appeal it to: Equal Employment Opportunity Commission, Office of Federal Operations," and that "[t]he complainant also has the right to file a civil action in an appropriate United States District Court … within 90 days of receipt of this final action <u>if no appeal to EEOC has been filed</u>; within 90 days after receipt of the EEOC's final decision on appeal; or after 180 days from the date of filing an appeal with the EEOC if there has been no final decision by the Commission." Doc. 28-1 at 14, 15; Doc. 32 at ¶ 6. Copies of the VA's final decision were sent via certified mail to both Smith and Bridge. Doc. 28-1 at 18; Doc. 32 at ¶ 8. The decision never reached Smith, whose envelope was returned to the VA with the notation "Unclaimed." Doc. 40 at ¶ 4; Doc. 33-2 at 15. At the summary judgment stage, the parties genuinely disputed whether Bridge received the envelope that had been sent to him. 2012 WL 1597432, at *3-4. The court resolves that factual dispute below.

Smith filed a Notice of Appeal with the EEOC on August 4, 2009. Doc. 40 at ¶ 6. On May 6, 2011, the EEOC issued an order dismissing Smith's appeal as untimely. Doc. 32 at ¶ 11; Doc. 28-1 at 28-30. The order explains:

> A copy of the certified mail return receipt card reveals that the FAD [the VA's final agency decision] was received at the address of [Smith's] attorney of record [Bridge] on June 12, 2009. A review of the FAD reveals that the [VA] properly advised [Smith] that she had thirty (30) calendar days after receipt of its final decision to file her appeal with the [EEOC]. Therefore, in order to be considered timely, [Smith] had to file her appeal no later than July 13, 2009. See 29 C.F.R. § 1614.402(b). [Smith] has not offered a justification for an extension of the applicable time limit for filing her appeal. See 29 C.F.R. § 1614.604(c).

Doc. 28-1 at 28. The decision informed Smith that she had ninety calendar days to file suit in federal court. She did so on August 4, 2011.

If Bridge indeed received the VA's final agency decision on June 12, 2009, then the EEOC correctly determined that she had filed her appeal too late: the appeal was filed on August 4, 2009, more than three weeks after the applicable thirty-day period had passed. But the court cannot defer to the EEOC's holding regarding the timeliness of Smith's appeal, *see Smith*, 445 F.3d at 1101, and the court denied the VA's summary judgment motion on exhaustion grounds because there was a genuine issue of material fact as to whether Bridge had in fact received the VA's final agency decision on June 12, 2009.

In support of summary judgment, the VA pointed to a signed certified mail return receipt card dated "6-12" and affixed with a signature that a reasonable person could conclude was Bridge's. Doc. 28-1 at 26. Smith responded that Bridge did not sign the return receipt card—which, according to Smith, reflects the signature of a "Tim Brde"—and argued that Bridge did not receive a copy of the VA's final agency decision until May 11, 2011. Doc. 32 at ¶ 9; Doc. 33-2 at 26 (¶¶ 10-11). Smith submitted an affidavit from Bridge averring that he did not receive the final agency decision until May 2011. Doc. 33-2 at 26 (¶¶ 10-11). A reasonable person could conclude from the affidavit that Bridge had not signed the card and had not received the final agency decision until May 2011, in which case Smith's EEOC appeal was not untimely. Because reasonable persons could disagree, summary judgment was inappropriate. *See Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 476 (7th Cir. 2009) ("it is well-established that evidence of proper mailing raises a rebuttable presumption of delivery"); *Vincent v. City Colls. of Chi.*, 485 F.3d 919, 923 (7th Cir. 2007) ("the trier of fact determines whether the presumption of delivery has been overcome").

The court's summary judgment order informed the parties that they should be prepared at the next status hearing "to address the means by which the exhaustion issue will be resolved on

the merits—in a pretrial evidentiary hearing before the court, or at trial." Doc. 41. At that status hearing, the court raised but did not resolve the question of whether Smith had a Seventh Amendment right to have a jury make exhaustion-related factual findings. The court then asked whether the parties would consent to have the court decide the exhaustion issue after an evidentiary hearing. The exchange with Bridge went as follows:

> Mr. Bridge: I well, summary having been denied, it's a question of fact like any other.
>
> The Court: It's a question of fact on the exhaustion issue?
>
> Mr. Bridge: On the exhaustion issue.
>
> The Court: Right. So, [Defendant is] not going to file summary judgment again on the exhaustion issue. It's going to be resolved at an evidentiary hearing before me, and you're both in agreement on that, is that correct?
>
> Mr. Bridge: I guess, Judge, I have no objection.

The VA's attorney agreed as well. In the minute order issued that day, the court stayed merits discovery, allowed discovery regarding exhaustion to proceed, and stated: "Evidentiary hearing regarding exhaustion is set for 7/11/2012 at 2:00 p.m." Doc. 43. After re-setting the evidentiary hearing, Doc. 53, the court conducted the hearing on August 8, 2012, Doc. 54.

## Discussion

The court first will address Smith's argument, raised for the first time at the evidentiary hearing, that she has a Seventh Amendment right to have a jury decide exhaustion-related factual questions. The court holds that Smith waived any Seventh Amendment right she might have had by explicitly consenting to the evidentiary hearing. Second, the court will set forth its findings of fact and conclusions of law on the exhaustion question. In short, the court finds that the signature on the aforementioned certified mail return receipt card is indeed Bridge's and that

6

Bridge received the VA's final administrative decision on or about June 12, 2009, and therefore that Smith failed to exhaust her administrative remedies. And the court concludes that Smith's failure to exhaust bars her discrimination claim and also her retaliation claim to the extent it is based on alleged retaliatory acts committed before she filed her formal administrative complaint with the VA. However, the retaliation claim may proceed to the extent, if any, it rests on alleged retaliatory acts committed after Smith filed her formal complaint with the VA.

## I. Whether Smith Waived Any Seventh Amendment Right She Might Have Had

As noted above, when the court proposed at the status hearing that the findings of fact necessary to resolve the exhaustion issue be made by the court after an evidentiary hearing, it raised the possibility that Smith had a Seventh Amendment right to have a jury make those factual findings. Because both parties agreed that the court should make those factual findings, the Seventh Amendment issue was mooted.

At the evidentiary hearing, Smith for the first time asserted a right to a jury decision on whether Bridge received the VA's final agency decision on June 12, 2009. The court orally held that Smith had waived any jury trial right she may have had through Bridge's explicit statement at the status hearing that he "had no objection" to the court acting as finder of fact with respect to exhaustion. The court added that Smith did not object to the scheduled evidentiary hearing at any point during the nearly three months that passed between the status hearing and the evidentiary hearing.

The court adheres to its ruling. Although Smith's complaint demands a jury, Doc. 1 at 1, both parties stipulated at the status hearing to have exhaustion-related factual issues decided by the court rather than by a jury. In light of that stipulation, Smith lost any Seventh Amendment right she might otherwise have had to a jury trial on those issues. Federal Rule of Civil

Procedure 39(a) provides in pertinent part that "[w]hen a jury trial has been demanded … [t]he trial on all issues so demanded must be by jury unless: (1) the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record …." Fed. R. Civ. P. 39(a); *see also Lovelace v. Dall*, 820 F.2d 223, 227 (7th Cir. 1987) ("a jury demand can only be withdrawn by either a written stipulation filed with the court or an oral stipulation made in open court"). Rule 39(a) "has been interpreted broadly so as to encompass orders entered by the court and not objected to [and] statements by the judge on the record that are not objected to." *Lovelace*, 820 F.2d at 227. The explicit statement by Smith's attorney that he "had no objection" to the court making exhaustion-related factual findings after a pretrial evidentiary hearing amply meets this standard. So, too, does Smith's failure to object to the court's minute order setting an "[e]videntiary hearing regarding exhaustion" at any time between the entry of that order on May 17, 2012, and the evidentiary hearing on August 8, 2012. Doc. 43. By the time Smith objected at the evidentiary hearing, she had long since consented; the objection came far too late. Accordingly, the court will proceed to set forth its findings of fact and conclusions of law on the exhaustion issue.

## II.     Findings of Fact and Conclusions of Law

Pursuant to Federal Rule of Civil Procedure 52, the court enters the following findings of fact and conclusions of law, which are based not only on the evidence presented at the evidentiary hearing, but also on the evidence that was not genuinely disputed at summary judgment and that is set forth above in the Background section. *See* Fed. R. Civ. P. 52(a)(1) ("In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of

8

decision filed by the court."); *Khan v. Fatima*, 680 F.3d 781, 785-86 (7th Cir. 2012) (discussing the requirements of Rule 52(a)(1)). To the extent that any findings of fact may be considered conclusions of law, they shall be deemed conclusions of law, and vice versa. The court makes its factual findings by the preponderance of the evidence. After considering the admissible evidence, and after assessing the credibility of the witnesses, the court finds and concludes that Bridge received the VA's final agency decision on June 12, 2009, that Smith's notice of appeal to the EEOC was untimely filed, and that Smith therefore failed to exhaust her administrative remedies. Accordingly, the VA is entitled to judgment on Smith's discrimination claim and also on her retaliation claim to the extent it complains of alleged retaliatory conduct occurring before she filed her formal administrative complaint with the VA.

## Findings of Fact

In addition to the undisputed evidence from the summary judgment stage set forth above in the Background section, the court makes the following findings of fact:

1. Jeanne Long was a paralegal specialist in the VA's Office of Employment Discrimination and Complaint Adjudication ("ODECA"). Long's testimony at the evidentiary hearing was highly credible.

2. ODECA adjudicates discrimination complaints filed with the VA, such as the formal administrative complaint that Smith filed.

3. One of Long's duties as a paralegal specialist was to dispatch ODECA's mail, although she shared that duty with one other person.

4. Long testified that she was familiar with ODECA procedures for dispatching mail. After a decision on a discrimination complaint has been signed, the person whose duty is to mail the decision out will photocopy the decision, fill out a certificate of service with her name

and the date, attach a certificate of receipt, and put an article number on the certificate of receipt. That person then puts the receipt numbers on the envelopes for the complainant (in this case, Smith) and the complainant's representative (in this case, Bridge), and sends them out by certified mail.

5. Long was the paralegal specialist assigned to dispatch the materials concerning the VA's final agency decision in Smith's case. Long did so on June 8, 2009. On that date, Long signed a certification of service (the final two pages of VA Exhibit 6) certifying that Long mailed the VA's final agency decision to Smith and to Bridge on that day.

6. Long does not have a specific recollection of sending the final agency decision to Smith and Bridge. However, the court finds that the ODECA procedures Long described were followed with respect to that final agency decision. In particular, the court finds that Long put the final agency decision and other materials into envelopes addressed to Smith and to Bridge and sent both by certified mail on June 8, 2009.

7. The first two pages of VA Exhibit 7 consist of photocopies of both sides of the certified mail return receipt (also known as a "green card") that was sent with the envelope containing the final agency decision that was mailed to Bridge on June 8, 2009. The certified mail number of the envelope sent to Bridge was: 7004 2510 0004 7510 4310. VA Exhibit 6 at 6.

8. The third page of VA Exhibit 7 is a photocopy of the envelope sent that same day to Smith, which was returned "Unclaimed." The certified mail number of the envelope sent to Smith was: 7004 2510 0004 7510 4303. VA Exhibit 6 at 6.

9. The VA Exhibit 7 green card states that the attached envelope was addressed to "Timothy A. Bridge, Esq., 3N206 Loblolly Lane, St. Charles, IL 60175." The card also states Smith's name and her VA case number, 200J-0578-2007101636.

10. The case number was written on the VA Exhibit 7 green card by the secretary at ODECA before the envelope bearing the card was sent out, in keeping with ODECA's usual procedure in mailing out agency decisions.

11. Smith's name was written on the VA Exhibit 7 green card only after it was returned to ODECA. ODECA does not write the complainant's name on green cards when they are sent out due to privacy concerns with displaying a complainant's name together with her case number on the external part of an envelope sent through the public mails.

12. The space for an "Article Number" on the VA Exhibit 7 green card is blank, even though ODECA standard practice is to write an article number in that space. The court credits Long's testimony that article numbers are sometimes left off, and finds that the absence of an article number does not cast doubt on the court's finding that all other procedures were correctly followed with respect to the green card on the envelope sent to Bridge.

13. The VA Exhibit 7 green card's "Signature" box contains a signature that is not a model of penmanship but that could easily be read to say "Tim Bridge." That green card's "Received by (Printed Name)" box contains the handwritten initials "TAB." That green card's "Date of Delivery" box contains the handwritten date "6-12."

14. VA Exhibit 11 contains several color photocopies of green cards from certified mail sent by the VA to Bridge. On cross-examination, Bridge admitted (and the court finds) that he was the person who signed all of the VA Exhibit 11 green cards.

15. The "Signature" boxes of the VA Exhibit 11 green cards bear signatures that vary in certain minor respects, but that are all in a single individual's handwriting. Each signature could be read as "Tim Bridge," "Timothy Bridge," or "Timothy A. Bridge," though the penmanship is less clear in some cases than in others.

16. The court finds by a preponderance of the evidence that the signatures in the "Signature" boxes of the VA Exhibit 11 green cards and the signature in the "Signature" box of the VA Exhibit 7 green card were made by the same individual.

17. The "Received by (Printed Name)" boxes of the VA Exhibit 11 green cards bear either the initials "TAB" or the name "Tim Bridge" or "Timothy Bridge."

18. Besides being similar as a whole, the signature on the VA Exhibit 7 green card bears the following similarities to the signatures on most or all of the VA Exhibit 11 green cards: a cursive "T" in "Tim" or "Timothy" made in a single upward-and-downward swoop, like a "V" that has been rotated 120 degrees counterclockwise; the "im" in "Tim" or "Timothy" is a single pen stroke that begins at the top of the "i"; and the upper part of the "d" in "Bridge" is a wide loop rather than a single vertical line.

19. The capital "B" on the VA Exhibit 7 green card was made with two strokes of the pen, while most of the capital "B"s on the VA Exhibit 11 green cards were made without lifting the pen. But the "B" on the final green card in VA Exhibit 11, dated 10-1, was made with two strokes and is nearly identical to the "B" on the VA Exhibit 7 green card.

20. Although some of the signatures on the VA Exhibit 11 green cards clearly say "Bridge," others (the clearest example of which is the signature on the first card, dated 7-16) are nearly identical to the signature on VA Exhibit 7, which might be read to say "Brde."

21. Given all this, the court finds that the signature on the VA Exhibit 7 green card was written by the same person (Bridge) whose signatures are on the VA Exhibit 11 green cards.

22. Bridge testified. Because Bridge was a witness, Smith was represented at the hearing by a second attorney, who examined Long and Bridge and made a closing statement.

23. Bridge is an attorney licensed to practice in Illinois. Bridge has specialized in employment discrimination law for the past twenty years.

24. Bridge testified that he did not receive the VA's final agency decision in Smith's case on or about June 12, 2009. Although the court finds that this testimony was sincere, meaning that Bridge believed he was telling the truth, the testimony is unpersuasive.

25. Bridge did not specifically recall whether he had received an envelope containing the final agency decision by certified mail on June 12, 2009.

26. Bridge testified that his usual office procedure when receiving certified mail is for him to sign the mail notice or green card, to write the date that the piece of mail was received on the envelope, to write the date on the document contained within the envelope, and then to place the document in the relevant case file.

27. The court finds that while this may be Bridge's usual procedure, it was not followed on June 12, 2009, with the result being that Bridge lost track of the VA's final agency decision in Smith's case.

28. No other person in Bridge's home or office, other than himself, is authorized to sign his name on certified mail green cards.

29. Plaintiff Exhibit 8 consists of photocopies of "Track & Confirm Delivery Status" inquiries made by Bridge in December 2011 regarding the mailing of the VA's final agency decision to Smith and Bridge in early June 2009. The response to both inquiries state: "There is no record found for this mail piece." Because it is clear that a certified mail envelope was sent to Smith and returned "Unclaimed," VA Exhibit 7 at 3, the "no record" response to the inquiry for Smith's envelope shows that the Postal Service's certified mail records are incomplete. Given

this, the "no record" response to the inquiry for Bridge's envelope does not indicate anything about that envelope.

30. Bridge was presented at the evidentiary hearing with the VA Exhibit 7 green card. Bridge testified that the signature on that card is not his. This testimony was not persuasive because the signature clearly belongs to the same person who signed the VA Exhibit 11 green cards and because Bridge was the person who signed those green cards.

31. Bridge testified that the signature on the VA Exhibit 7 green card is not his because it misspells his name, dropping the "i" and the "g" in "Bridge." This testimony is unpersuasive. The penmanship is not of the highest grade, but there is nothing uncommon about a person's having a signature that elides certain letters in his name. (For an extreme example, see the district judge's electronic signature at the end of this opinion, which is the same signature used on all of his opinions.) Moreover, some of the "Bridge" signatures in the VA Exhibit 11 green cards also drop the "i" and "g," and Bridge admitted that those were his signatures.

32. Bridge testified that the "B" in the signature on the VA Exhibit 7 green card is not his because "almost without fail, my B is created from the bottom going up and making two loops. This appears to be either a trace or somebody made a strike down first and then made the [loops of the B] thereafter, rather than one smooth movement."

33. Bridge's description of the B on the VA Exhibit 7 green card is accurate, as is his description of how he usually writes the letter B. But at least one of the VA Exhibit 11 green cards has a B identical to the B on the VA Exhibit 7 green card, indicating that Bridge sometimes writes his B with two strokes. On cross-examination, Bridge conceded (and the court finds) that there is a range of variation in his signatures in the VA Exhibit 11 green cards.

34. The VA Exhibit 7 green card was attached to an envelope that was sent to Bridge's address on or around June 8, 2009, and that contained the VA's final agency decision in Smith's case.

35. Bridge received that envelope at the time that he signed the attached VA Exhibit 7 green card, on or about June 12, 2009.

36. Thus, Bridge received the VA's final agency decision on or about June 12, 2009.

37. Bridge filed Smith's notice of appeal with the EEOC on August 4, 2009, more than thirty days after he received the VA's final agency decision.

**Conclusions of Law**

Bridge received the VA's final agency decision more than thirty days before he filed Smith's notice of appeal with the EEOC. To be timely filed, that notice of appeal had to be filed within thirty days of Bridge's receipt of the final agency decision. *See* 29 C.F.R. § 1614.401(a) ("A complainant may appeal an agency's final action or dismissal of a complaint."); *id*. § 1614.402(a) ("Appeals described in § 1614.401(a) … must be filed within 30 days of receipt of the dismissal, final action or decision."). Therefore, the EEOC correctly held that the notice of appeal had not been timely filed and properly dismissed the appeal as untimely. It follows that Smith failed to properly exhaust her administrative remedies. This failure to exhaust requires dismissal of Smith's discrimination claim, which rests entirely on alleged misconduct occurring before she filed her formal administrative complaint with the VA. *See Teal*, 559 F.3d at 693; *Smith*, 445 F.3d at 1006 n.14; *Ester*, 250 F.3d at 1071; *Gibson*, 201 F.3d at 994.

The impact of Smith's failure to exhaust on her retaliation claim presents a more complicated issue. Although the general rule provides that a Rehabilitation Act or Title VII plaintiff may bring only those claims that have been exhausted, the Seventh Circuit has carved an

exception, holding that "a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge." *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989); *see also Horton v. Jackson Cnty. Bd. of Cnty. Comm'rs*, 343 F.3d 897, 898 (7th Cir. 2003) ("Retaliation for complaining to the EEOC need not be charged separately from the discrimination that gave rise to the complaint, at least … if the person discriminated against and the person retaliated against are the same.") (citations omitted); *Gawley v. Ind. Univ.*, 276 F.3d 301, 314 n.8 (7th Cir. 2001) ("Of course, an employee is not required to file a separate EEOC charge alleging retaliation when the retaliation occurs in response to the filing of the original EEOC charge."); *Heuer v. Weil-McLain*, 203 F.3d 1021, 1023 (7th Cir. 2000) (same); *McKenzie v. Ill. Dept. of Transp.*, 92 F.3d 473, 482 (7th Cir. 1996) (holding that a plaintiff may bring suit on a retaliation claim not included in her administrative charge "where the alleged retaliation arose after the charge of discrimination had been filed") (quoting *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 545 (7th Cir. 1988)); *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989) ("[W]e join the other circuits that have spoken to the question in adopting the rule that a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge."). The rationale for this exception is that requiring exhaustion of a claim that the plaintiff's employer retaliated against her for filing an administrative charge "would mean that two charges would have to be filed in a retaliation case—a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII." *McKenzie*, 92 F.3d at 482 (quoting *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981)). Consistent with this rationale, the Seventh Circuit held that this exception does not apply to claims based on alleged retaliatory acts committed *before* the plaintiff's filing of an administrative complaint, since such retaliation could be alleged in the

initial administrative complaint and therefore would not require a "needless" second administrative complaint. *Id*. at 482-83. As the Seventh Circuit explained:

> In this case, Ms. McKenzie alleges several retaliatory acts, and two of those acts occurred prior to her filing of her original EEOC charge. Yet Ms. McKenzie did not mention her claims of retaliation in either her original charge against IDOT or her amended charge filed several months later. Because each of those incidents of retaliation could have been—and should have been—included in her administrative charges, they cannot now serve as the basis of the retaliation claim alleged in her complaint.

*Id*. at 483.

Like the plaintiff in *McKenzie*, Smith appears to allege retaliatory acts occurring both before and after she filed her formal administrative complaint with the VA. Doc. 1 at ¶ 36(F) (referring to retaliation for "participation in EEO activity"). The complaint is not detailed, and the court cannot determine at this stage whether any of the alleged retaliatory acts occurred after Smith filed her formal complaint with the VA. For now, it is enough to say that, under *McKenzie* and similar Seventh Circuit decisions, Smith's failure to exhaust precludes her from proceeding with her retaliation claim to the extent it is based on alleged retaliatory conduct occurring before she filed her formal administrative complaint with the VA, but that she may proceed with her retaliation claim to the extent (if any) that it pertains to allegations of post-filing retaliation.

Before closing, the court notes that there may be some uncertainty regarding whether *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), abrogated the aforementioned exception to the exhaustion rule. In her brief opposing summary judgment, Smith submitted that she was entitled to the benefit of the exception. Doc. 31 at 11-13. The VA did not argue in its reply brief that *Morgan* had abrogated the exception, Doc. 39 at 8-9, thereby forfeiting the point. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to

respond to an argument … results in waiver."). Even if the VA had argued that *Morgan* abrogated the exception, the court would have rejected that argument for the reasons given in *Fentress v. Potter*, 2012 WL 1577504, at *2 (N.D. Ill. May 4, 2012).

## Conclusion

For the foregoing reasons, the VA is entitled to judgment on Smith's discrimination claim (Count I of the complaint) and on her retaliation claim (Count II of the complaint) to the extent it rests on alleged retaliatory acts occurring before she filed her formal administrative complaint with the VA. Smith may proceed with her retaliation claim to the extent, if any, it rests on alleged retaliatory acts occurring after she filed her formal administrative complaint with the VA.

July 10, 2013 _____

United States District Judge